No. 24-1590

# IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

CROSSPOINT CHURCH,

*Plaintiff-Appellant,*

v.

A. PENDER MAKIN, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE MAINE DEPARTMENT OF EDUCATION; JEFFERSON ASHBY, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE MAINE HUMAN RIGHTS COMMISSION; EDWARD DAVID, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE MAINE HUMAN RIGHTS COMMISSION; JULIE ANN O'BRIEN, IN HER OFFICIAL CAPACITY AS COMMISSIONER OF THE MAINE HUMAN RIGHTS COMMISSION; MARK WALKER, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE MAINE HUMAN RIGHTS COMMISSION; THOMAS L. DOUGLASS, IN HIS OFFICIAL CAPACITY AS COMMISSIONER OF THE MAINE HUMAN RIGHTS COMMISSION,

*Defendants-Appellees.*

On Appeal from the United States District Court for the
District of Maine, No. 1:23-cv-00146 (Woodcock, J.)

## REPLY BRIEF OF APPELLANT CROSSPOINT CHURCH

Kelly J. Shackelford
David J. Hacker
Jeremiah G. Dys
First Liberty Institute
2001 W. Plano Parkway, Ste. 1600
Plano, TX 75075
(972) 941-4444
kshackelford@firstliberty.org

Camille P. Varone
First Liberty Institute
1331 Pennsylvania Ave. NW, Ste. 1410
Washington, DC 20004
(202) 921-4105
cvarone@firstliberty.org

November 12, 2024

Patrick Strawbridge
Consovoy McCarthy PLLC
10 Post Office Sq.
8th Flr. S. PMB #706
Boston, MA 02109
(617) 227-0548
patrick@consovoymccarthy.com

Tiffany H. Bates
Consovoy McCarthy PLLC
1600 Wilson Blvd., Ste. 700
Arlington, VA 22209
(703) 243-9423
tiffany@consovoymccarthy.com

*Counsel for Appellant*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ii

Introduction ...........................................................................................................................1

Argument ................................................................................................................................2

    I.      Crosspoint need not risk incurring crushing legal penalties to seek relief. .....2

    II.    Section 4602 violates the Free Exercise Clause. .................................................5

          A.      Section 4602 burdens Crosspoint's religious exercise. ..........................6

          B.      Section 4602 is neither neutral nor generally applicable. ......................8

          C.      Section 4602 cannot satisfy strict scrutiny. ......................................... 12

    III.   Crosspoint reasonably fears that Defendants will enforce §4572 against it in violation of the Establishment and Free Exercise Clauses. ....................... 13

    IV.   Section 4602 violates the Free Speech Clause. ................................................. 14

Conclusion ........................................................................................................................... 16

Certificate of Compliance .................................................................................................. 18

Certificate of Service .......................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**

*303 Creative LLC v. Elenis*,
600 U.S. 570 (2023) ................................................................................ 3, 13

*Alexander v. Sandoval*,
532 U.S. 275 (2001) ..................................................................................... 9

*Carson v. Makin*,
401 F. Supp. 3d 207 (D. Me. 2019) ............................................................ 7

*Carson v. Makin*,
596 U.S. 767 (2022) ................................................................................ 8, 10

*Carson v. Makin*,
979 F.3d 21 (1st Cir. 2020) ....................................................................... 10

*Chamber of Commerce v. FEC*,
69 F.3d 600 (D.C. Cir. 1995) ...................................................................... 3

*Doe v. Reg'l Sch. Unit 26*,
86 A.3d 600 (Me. 2014) ........................................................................... 6, 7

*Fitzpatrick v. Town of Falmouth*,
879 A.2d 21 (Me. 2005) ............................................................................... 6

*Gonzales v. O Centro Espirita Beneficente Uniao*,
546 U.S. 418 (2006) .................................................................................... 13

*Fulton v. City of Philadelphia, Pa.*,
593 U.S. 522 (2021) .............................................................................. 12, 13

*Holt v. Hobbs*,
574 U.S. 352 (2015) .................................................................................... 13

*Kennedy v. Bremerton Sch. Dist.*,
597 U.S. 507 (2022) .................................................................................... 13

ii

*N.H. Lottery Comm'n v. Rosen*,
    986 F.3d 38 (1st Cir. 2021) ....................................................................................1

*N.H. Right to Life Pol. Action Comm. v. Gardner*,
    99 F.3d 8 (1st Cir. 1996) ................................................................... 3, 4

*R.I. Ass'n of Realtors, Inc. v. Whitehouse*,
    199 F.3d 26 (1st Cir. 1999) ..............................................................2, 3, 4

*Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*,
    547 U.S. 47 (2006) ......................................................................... 15, 16

*St. Dominic Acad. v. Makin*,
    No. 2:23-cv-00246-JAW (D. Me. Aug. 8, 2024) ........................................ 12

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014) ..............................................................................3

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
    582 U.S. 449 (2017) ..............................................................................8

*Virginia v. Am. Booksellers Ass'n Inc.*,
    484 U.S. 383 (1988) ..............................................................................4

*Yee v. City of Escondido, Cal.*,
    503 U.S. 519 (1992) ............................................................................ 11

**STATE CONSTITUTIONAL PROVISIONS**

Maine Article IX § 11.......................................................................................... 10

**STATUTES & REGULATIONS**

5 M.R.S.A. 4553 .............................................................................................4, 8, 11

5 M.R.S.A. 4572 ..............................................................................................13, 16

5 M.R.S.A. 4602 ............................................................................................ *passim*

5 M.R.S.A. 4603 .............................................................................................. 2, 10

5 M.R.S.A. 4612 ........................................................................................... 2, 10

05-071 Me. Code R. §4.05 ................................................................................. 8

94-348 Me. Code R. §4.05. ............................................................................... 8

**INTRODUCTION**

Maine's years-long effort to avoid adjudicating the tuition program's unconstitutional sectarian exclusion precipitates this case. The state maintained throughout *Carson v. Makin* that courts could not review BCS students' challenge to the sectarian exclusion because certain Maine Human Rights Act provisions violated BCS's religious beliefs and would prevent it from participating in the tuitioning program. When the Supreme Court disagreed and invalidated the sectarian exclusion, the state unsuccessfully sought to avoid an injunction by highlighting the poison pill's deterrent effect. Now that BCS challenges those provisions, the state contends they are no obstacle. After asserting for five years that BCS will "be forced to sit like Damocles" and "operate under a dangling sword" if it participates in the tuitioning program, the state cannot avoid adjudication of its unconstitutional actions by pretending the threat does not exist. *See N.H. Lottery Comm'n v. Rosen*, 986 F.3d 38, 53 (1st Cir. 2021).

The state offers Crosspoint "a choice." Resp. Br. at 3. "It can continue to be exempt from the applicable provisions of the MHRA, or it can accept public funds." *Id.* But the First Amendment precludes forcing Crosspoint to choose. The case is ripe for adjudication, and this Court should reverse the decision below.

1

## ARGUMENT

### I.   Crosspoint need not risk incurring crushing legal penalties to seek relief.

Crosspoint need not risk the MHRA's substantial legal penalties to seek relief.[1]

To determine ripeness, "a federal court must evaluate the fitness of the issue presented and the hardship that withholding immediate judicial consideration will work." *R.I. Ass'n of Realtors, Inc. v. Whitehouse*, 199 F.3d 26, 33 (1st Cir. 1999). In the "pre-enforcement context," when a party has "concrete plans to engage immediately (or nearly so) in an arguably proscribed activity," the case is "fit for judicial review." *Id.* When "the challenged statute, fairly read, thwarts … the plan[,] … the element of hardship" also exists. *Id.* If the general precepts of fitness and hardship apply, a court should "have little difficulty in concluding that [the case] was ripe when filed." *Id.*

Both requirements are met here. BCS is eligible for the tuitioning program and would participate if the challenged MHRA provisions did not impose liability because of BCS's religious exercise. JA58 (Stip. Facts ¶¶27-31). Defendants do not question BCS's eligibility or intent to participate in the program. *See* Resp. Br. at 29. Nor do they dispute that BCS would be required to comply with the challenged MHRA provisions

---

[1] The presence of a private right of action does not alter the relief Crosspoint seeks against Defendants, who are uniquely positioned to enforce the challenged provisions. The MHRC has broad authority to investigate complaints and initiate enforcement action, and the law incentivizes private plaintiffs to present their claims to the MHRC first. 5 M.R.S.A. §§4612, 4622. The Education Commissioner is entitled to participate in those proceedings and shares rulemaking authority with the MHRC. 5 M.R.S.A. §4603-04. Preventing Defendants from enforcing the challenged provisions would thus provide Crosspoint significant relief.

2

if BCS participates in the tuitioning program. For this reason, BCS has refrained from participating in the tuitioning program. JA58 (Stip. Facts ¶31). *See Whitehouse*, 199 F.3d at 34 (When a party is forced to "refrain[] from carrying forward its plan because it reasonably fear[s]" enforcement, "delaying or denying resolution of the issue would [work] a substantial hardship."). Thus, the poison pill forces BCS to either relinquish its religious identity or forego participation in the tuitioning program for which it is otherwise eligible. "Either injury is justiciable." *See N.H. Right to Life Pol. Action Comm. v. Gardner*, 99 F.3d 8, 14 (1st Cir. 1996).

Defendants claim (at 29) that BCS's fears are "entirely speculative." They question "whether gay or transgender children would apply" to BCS, "given Crosspoint's tenants and teachings" about sex, marriage, and identity. Resp. Br. at 29. And they demand specific evidence that "children who are gay, transgender, or do not share Crosspoint's religious beliefs are likely to apply." *Id.* at 31. But the "reasonableness of the fear of enforcement," which "is at the core of both standing and ripeness," *Whitehouse*, 199 F.3d at 33, is a "quite forgiving" standard, satisfied even if the statute at issue has never been enforced and the defendants represent that it will not be enforced, so long as the statute is not "moribund" and at least arguably prohibits the plaintiff's intended behavior, *N.H. Right to Life*, 99 F.3d at 14-15; *Chamber of Commerce v. FEC*, 69 F.3d 600, 603 (D.C. Cir. 1995). *See also Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014); *303 Creative LLC v. Elenis*, 600 U.S. 570 (2023). The poison pill is recently adopted and "'aimed directly' at entities like the plaintiff[]": religious schools eligible for

tuition.[2] *See N.H. Right to Life*, 99 F.3d at 15 (quoting *Virginia v. Am. Booksellers Ass'n Inc.*, 484 U.S. 383, 392 (1988)). The Defendants agree (at 3, 31) that the challenged MHRA provisions would apply to BCS if it became a tuitioning school, and they do not disclaim any intent to enforce the provisions. BCS reasonably fears enforcement on these grounds alone.[3] *See Whitehouse*, 199 F.3d at 36. BCS thus faces the "direct and immediate dilemma of choosing between the Scylla of intentionally flouting state law and the Charybdis of forgoing what it believed to be constitutionally protected activity." *Id.* at 34 (cleaned up). Defendants effectively claim that the poison pill's success in deterring BCS from participating in the tuition program insulates it from legal challenge. But "[i]t would be little short of perverse to deny a party standing because the statute she challenges is so potent that no one dares violate it, especially when the result is widespread self-censorship." *Id.* at 33.

The district court correctly agreed. It concluded that there is no "serious dispute" that "if BCS received state funding," its policies would "conflict directly with the MHRA's prohibition against discrimination on the basis of sexual orientation or gender

---

[2] Notably, because §4602 applies only to public schools and tuitioning private schools (not to all schools), *see* 5 M.R.S.A. §4553(2-A), the 2021 amendment to §4602's religious exemption served no purpose unless the sectarian exclusion fell and religious schools became eligible to tuition.

[3] The statements of the then-Speaker of the House, the Attorney General, and the Education Commissioner in *Carson* provide remarkable clarity as to the poison pill's intended purpose and effect, but they are not essential to meet the "low threshold" of reasonable fear of enforcement. *See, e.g.*, *N.H. Right to Life*, 99 F.3d at 14-15.

identity." ADD23. And the "only way for Crosspoint to avoid liability" is for it to "refrain[] from acting." ADD24. "Once Crosspoint is approved for tuitioning," the court explained, "a member of a protected class could apply at any time, forcing Crosspoint to either violate the statute or compromise its religious beliefs." *Id.* Thus, Crosspoint is forced to "do nothing" or "give up control over concerns for legal liability." *Id.*

Crosspoint's fear of enforcement is—as the district court concluded—"eminently reasonable." ADD26-27. Especially so considering "the timing of the amendments," the then-Speaker of the House's statement that the law was designed to undermine the Supreme Court's decision in *Carson*, and the Maine Attorney General's statements suggesting he would enforce the MHRA against religious schools that apply to receive public funds. *Id.* Such statements by the state's chief law enforcement officer "reasonably" caused Crosspoint "to conclude that he would pursue [them] for asserted violations of the MHRA's antidiscrimination provisions." *Id.* Indeed, the court continued, it is a "short step" from Crosspoint accepting tuition funds to the Attorney General's enforcement of the MHRA "with its potential of civil and other penalties." ADD24.

## II. Section 4602 violates the Free Exercise Clause.

Section 4602 violates the Free Exercise Clause because it burdens Crosspoint's religious exercise and is neither neutral nor generally applicable. Defendants' arguments to the contrary are unavailing.

### A. Section 4602 burdens Crosspoint's religious exercise.

Defendants' argument that §4602 does not burden BCS's religious exercise (at 33-34) relies on two erroneous assumptions: 1) that §4602 applies only to admissions and 2) that BCS's religious exercise is limited to simply expressing its religious beliefs. In fact, BCS's religious exercise encompasses all aspects of operating BCS according to its religious beliefs. JA58-59 (Stip. Facts ¶¶25, 38-52); JA83-90 (BCS Student Handbook at 1-8.). BCS's requirement that students must behave consistently with its statement of faith is an exercise of BCS's religious beliefs and is necessary to its religious educational mission. JA86-90 (BCS Student Handbook at 4-8). Thus, applicants for admission must agree to cooperate with BCS's statement of faith and code of conduct. A student who persistently advocates beliefs contrary to BCS's statement of faith is subject to expulsion for failure to cooperate with BCS's religious purpose and code of conduct. JA59 (Stip. Facts ¶¶39-42); JA90 (BCS Student Handbook at 8).

Section 4602 burdens BCS's religious exercise not just in its admissions, as Defendants claim (at 24, 50), but also in BCS's daily internal operations. *See* 5 M.R.S.A. §4602(1)(A); *Doe v. Reg'l Sch. Unit 26*, 86 A.3d 600, 607 (Me. 2014) (*RSU 26*); *Fitzpatrick v. Town of Falmouth*, 879 A.2d 21, 27 (Me. 2005). Defendants conceded below that §4602(5)(D) would require BCS to permit student religious expression contrary to its statement of faith. *See* Def. PI Resp. (Doc. 14) at 10 n.12. And it admitted here that at the very least, that provision "could be interpreted" to "requir[e] schools to permit students to wear symbols of any religion." Resp. Br. at 53-54. Though Defendants dispute

6

it (at 51), §4602 would also require BCS to affirm a student's gender identity and sexual orientation, contrary to its statement of faith. *RSU 26*, 86 A.3d at 607; JA86-89 (BCS Handbook 4-7). Defendants posit (at 33-34) that "it is impossible to see how" admitting a student that disagrees with Crosspoint's beliefs about sexuality and gender would burden its religious exercise. But as BCS's 30(b)(6) representatives testified in *Carson*, it violates BCS's statement of faith to admit a student or allow a student to remain enrolled who violates BCS's statement of faith by presenting as a gender not consistent with his or her biological sex or by professing the "entrenched" belief that a homosexual sexual orientation is "who [the student is] and [the student] think[s] that is right and good." Defs.' Opp'n, Ex. 4, at 29-30; Stipulated Record, *Carson v. Makin*, 401 F. Supp. 3d 207 (D. Me. 2019) (No. 1:18-cv-327-DBH), Doc. No. 24-16 (Boone Dep. at 23-25).[4] Moreover, while BCS considers applicants who are not Christian, BCS does ask about and consider applicants' religious beliefs in the admissions process and evaluates the student's spiritual fit with the school's statement of faith. JA89-90 (BCS Student

---

[4] Defendants' hypothetical concerns that a ruling for Crosspoint could justify a "devoutly religious" restaurant owner "bar[ring] gay and transgender people on religious grounds" is misplaced. Resp. Br. at 34. Restaurants do not function as or serve a religious purpose. BCS, on the other hand, was created specifically to educate children in its faith tradition. And parents rely on that religious purpose in sending their children there.

Handbook at 7-8). Preferential admissions policies violate §4602. *See id.* §4602(1)(D); 05-071 Me. Code R. §4.05; 94-348 Me. Code R. §4.05.[5]

To say that §4602 does not burden BCS's religious practice because BCS may still express—just not *enforce*—its religious beliefs is absurd. As the district court correctly concluded, "[t]he statute plainly would prohibit Crosspoint—if it joins the tuitioning program—from denying admission to or otherwise excluding applicants based on their sexual orientation, gender identity, or religion." ADD30. And because Crosspoint requires its students to comply with its Statement of Faith, "the MHRA effectively prohibits Crosspoint from enforcing some tenets of those policies." ADD33. More broadly, the poison pill perpetuates the sectarian exclusion's unconstitutional goal of excluding schools with disfavored religious beliefs from participating in the tuitioning program. *See Carson v. Makin*, 596 U.S. 767, 774-76, 780, 788 (2022). Denying BCS the ability to participate in the program because of its religious beliefs is a burden. *See Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 462-63 (2017).

## B. Section 4602 is neither neutral nor generally applicable.

The poison pill also lacks neutrality. Because §4602 only applies to public schools and tuitioning schools (not to all schools), *see* 5 MRSA §4553(2-A), the poison pill served no purpose unless the legislature expected the sectarian exclusion to fall and

---

[5] The regulatory provisions do not appear to have been updated to reflect protected classes other than sex, but as a result of the amendments to §4602, the prohibitions on preferential admissions practices would apply with equal force to all the protected classes listed in §4602. *See* 5 M.R.S.A. §4602(1)(D).

religious schools to become eligible to tuition. And although Defendants attempt to minimize the statements of Attorney General Frey and the then-Speaker of the Maine House of Representatives, those admissions provide remarkable clarity as to the poison pill's purpose.

To start, §4602 targets Crosspoint's religious exercise. Defendants' claim that the Attorney General "expressed no hostility toward BCS or its religious beliefs," nor "indicate[d] an intent to preclude BCS from participating in the tuition program" is wholly without merit. Resp. Br. at 36. Section 4602 was expressly designed to exclude Crosspoint from the tuitioning program, because—in the Maine Attorney General's own words—Crosspoint's specific religious beliefs are "inimical to a public education" and "promote discrimination, intolerance, and bigotry." JA275. Defendants attempt to cast the Attorney General's warning that "[e]ducational facilities that accept public funds must comply with anti-discrimination provisions of the Maine Human Rights Act," and that "this would require some religious schools to eliminate their current discriminatory practices" as entirely irrelevant to enforcement. *Id.* After all, they argue, "it is the MHRC that is charged with investigating potential discrimination and bringing complaints." Resp. Br. at 37. But that ignores the fact that the Attorney General is the state's chief law enforcement officer—a fact the district court found relevant in concluding that Crosspoint's fear of enforcement was "eminently reasonable." ADD26-27.

That the Attorney General is not a member of the legislature is not dispositive. Legislatures "do[] not legislate in a vacuum." *Alexander v. Sandoval*, 532 U.S. 275, 313

9

(2001) (Stevens, J., dissenting).[6] "[E]vidence as to the context in which [the state] legislated" is relevant. *Id.* Especially so here. As Defendants admit, the Attorney General stated that he "'intend[ed] to explore with Governor Mills' administration and members of the Legislature statutory amendments to address the Court's decision and ensure that public money is not used to promote discrimination, intolerance, and bigotry.'" Resp. Br. at 37. That, combined with the legislation's timing and structure, show that §4602's purpose was to preemptively exclude BCS and other schools with similar beliefs from the tuitioning program. In *Carson*, Commissioner Makin identified particular requirements that would prompt BCS to decline to participate in the tuitioning program. *See* Defs.' Mot. for Summ. J. (D. Me.), Doc. 29 at 7-8, 13-14; Br. of Appellee at 22-23, *Carson v. Makin*, 979 F.3d 21 (1st Cir. 2020) (No. 19-1746). The legislature then imposed those very same requirements after the Commissioner's attempt to craft a poison pill from existing law failed. *See* Br. for Resp't at 54, *Carson*, 596 U.S. 767; *Carson*, 979 F.3d at 28, 31; P.L. 2021, Ch. 366, §19; 5 M.R.S.A. §4602(5)(C).[7]

---

[6] This is especially true in Maine, where the Attorney General is directly appointed by the legislature. *See* Me. Const. art. IX, §11.

[7] Defendants assert that it is "not true" that the Commissioner threatened to enforce §4602 against BCS if it participated in the tuitioning program in its Supreme Court brief in *Carson*. Resp. Br. at 37 n.19. Crosspoint respectfully disagrees; the statements clearly imply a threat of enforcement. It is no answer that the Commissioner "has no … authority" to enforce the MHRA. As previously explained, the MHRC has broad authority to investigate complaints and initiate enforcement action, and the law incentivizes private plaintiffs to present their claims to the MHRC first. 5 M.R.S.A. §§4612, 4622. The Education Commissioner is entitled to participate in those proceedings and shares rulemaking authority with the MHRC. 5 M.R.S.A. §4603-04.

Defendants' final attempt to negate these discriminatory statements relies on the fact that the law was enacted on June 24, 2021, before the Supreme Court had granted certiorari in *Carson*. Resp. Br. at 39. This argument also fails. As the then-Speaker of the Maine House of Representatives boasted, the Maine legislature intentionally designed the poison pill because it had "[a]nticipated" a "ludicrous decision from the far-right SCOTUS." JA280. Moreover, because §4602 only applies to public schools and tuitioning schools (not to all schools), *see* 5 MRSA §4553(2-A), the poison pill served no purpose unless the legislature expected the sectarian exclusion to fall and religious schools to become eligible to tuition.

Section 4602 is not generally applicable. Defendants assert (at 41) that Crosspoint has waived this argument. But from the start, Crosspoint argued that the law was not generally applicable. JA34 (Compl. ¶105). When this suit was filed, §4602 categorically exempted single-sex schools from nearly all educational nondiscrimination provisions, including those relating to religion, sexual orientation, and gender identity, and Crosspoint raised that in its motion for a preliminary injunction. After this case was fully briefed in the district court, the Maine legislature eliminated that exemption. *See* 2023, P.L. ch. 188, §1, 2023 Me. Laws 370. Crosspoint is not foreclosed from making an additional argument in support of its original claim on appeal. The Supreme Court has consistently explained that "[o]nce a federal claim is properly presented, a party can make any argument in support of that claim; parties are not limited to the precise arguments they made below." *Yee v. City of Escondido, Cal.*, 503 U.S. 519, 534 (1992).

11

Nor is it impermissible to cite an intervening decision of a court holding that the provision at issue is not generally applicable. After the district court denied a permanent injunction here, the same court later held that §4602 is not generally applicable because it "does not apply to private postsecondary institutions or to schools located outside of Maine" that participate in the tuition program. *See St. Dominic Acad. v. Makin*, No. 2:23-cv-00246-JAW (D. Me. Aug. 8, 2024), Doc. 50 at 51. Defendant's argument to the contrary is not persuasive. Crosspoint does not argue—as Defendants assert—that "a state law is not generally applicable unless it applies across the United States." Resp. Br. at 42. But Maine has decided to allow out-of-state schools to participate in the tuitioning program for its residents. And it offers no good reason for allowing out-of-state schools to discriminate on the basis of any protected class other than disability. Defendants' argument that postsecondary schools are different because "students and their families are free to shop both within and outside of Maine for the postsecondary school that best fits their goals" fares no better. Resp. Br. 43. Indeed, the tuitioning program allows parents of primary and secondary education students to do the same.

### C.  Section 4602 cannot satisfy strict scrutiny.

Nor does §4602 survive strict scrutiny. Defendants assert (at 45-47) only a general interest in nondiscrimination rather than engaging in the Free Exercise Clause's "precise analysis" in which "courts must scrutinize[] the asserted harm of granting specific exemptions to particular religious claimants." *Fulton v. City of Philadelphia, Pa.*, 593 U.S. 522, 541 (2021). This analysis still applies when the government asserts

nondiscrimination as its interest. *Id.* The Supreme Court has repeatedly rejected arguments like Defendants' that a broad interest translates to a compelling interest in denying exemptions. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 436 (2006); *Fulton*, 593 U.S. at 541-42;[8] *Holt v. Hobbs*, 574 U.S. 352, 368 (2015). And Defendants' purported interest (at 45) in minimizing taxpayer conflict appears to be simply an implied heckler's veto, which does not justify a Free Exercise violation. *See Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 534 (2022). When a state's antidiscrimination law "collides" with the Constitution, "there can be no question which must prevail." *303 Creative*, 600 U.S. at 592.

## III. Crosspoint reasonably fears that Defendants will enforce §4572 against it in violation of the Establishment and Free Exercise Clauses.

Defendants repeat their contention that Crosspoint is trying "to create a controversy" over whether they will enforce the MHRA to impose liability on BCS for hiring only co-religionists. Resp. Br. at 48. A controversy already exists. While in the district court's view, the state has "disclaimed" any "future enforcement" "in a manner" that would contradict Crosspoint's ability to hire only co-religionists, BCS respectfully disagrees. ADD42-43. In its brief before the district court, Defendants asserted that BCS is "free to limit employment to persons who share Plaintiff's religion and who conform

---

[8] Defendants also misread *Fulton*. *See* Resp. Br. at 47. While *Fulton* acknowledged that that Philadelphia's interest in "the equal treatment of prospective foster parents and foster children" was "weighty," it nevertheless held that it was not a compelling interest that justified the city's burdening of the foster agency's free exercise rights. 593 U.S. at 522.

to its religious tenets." ADD42; Defs.' Opp'n at 18 (Doc. 14). But those religious tenets apparently may not include belief in "the biblical definition of marriage, sexuality and moral conduct, and the clear biblical teaching that gender is both sacred and established by God's design." JA89. Defendants clearly did not "disclaim" enforcing the challenged provision against BCS if were to reject an applicant on that basis. *See* Defs.' Opp'n at 18 & n.18. Nor do they "disclaim" such enforcement now. *See* Resp. Br. 48-49. Crosspoint thus fears Defendants will enforce the MHRA against it in violation of the MHRA's text and the First Amendment.

## IV.     Section 4602 violates the Free Speech Clause.

Finally, §4602 violates the Free Speech Clause. Defendants insist that "[t]he only thing that would change if Crosspoint accepted public funds is that it could not deny children educational opportunities based on sexual orientation, gender identity, or religion." Resp. Br. at 50. But BCS's religiously motivated policies and their enforcement cannot be separated from the messages BCS intends to convey. Despite Defendants' contention to the contrary (at 51), §4602 would require BCS to both admit students who disagree with its teachings on sexual orientation and gender and affirm those student's gender identities and sexual orientations, contrary to its statement of faith. JA86-87, 89 (BCS Student Handbook at 4-5, 7). As explained, it violates BCS's statement of faith to admit a student or allow a student to remain enrolled who presents as a gender not consistent with his or her biological sex or professes the "entrenched" belief that a homosexual sexual orientation is "who [the student is] and [the student] think[s] that is

14

right and good." Boone Dep., *supra*, at 23-25. For example, if the school admitted a male student who presented himself as a female, wore female clothing, and sought that others address him using female pronouns, it would undermine BCS's ability to convey its belief in the biblical definition of "sexuality and moral conduct, and the clear biblical teaching that gender is both sacred and established by God's design." JA89.[9]

Section 4602(5)(D) would also require BCS to permit student religious expression contrary to its statement of faith. Defendants explain that it is "doubtful" that Crosspoint would have to allow students to "broadcast Muslim prayer or allow an imam on campus to conduct religious services." Resp. Br. at 53-54. But §4602(5)(D) plainly states that "to the extent that an educational institution permits religious expression, it cannot discriminate between religions in so doing." Defendants' offer that this provision could merely "be interpreted" to "requir[e] schools to permit students to wear symbols of any religion" is no comfort. Allowing such expression would interfere with BCS's speech about the nature of salvation, since students agree when they join BCS to support and cooperate with the school's *Christian* religious mission. JA89-90. Indeed, it would "interfere[] with" BCS' "own message." *Rumsfeld v. Forum for Academic & Institutional Rights, Inc. (FAIR)*, 547 U.S. 47, 64 (2006).

---

[9] And even if "high school students can appreciate the difference between speech a school sponsors and speech the school permits because legally required to do so, pursuant to an equal access policy" (Resp. Br. at 52), BCS is home to many elementary and middle school students who cannot so easily be presumed to "appreciate th[at] difference."

As explained at length in Crosspoint's opening brief, *see* App. Br. at 31-35, Defendant's heavy reliance on *Rumsfeld v. Forum for Academic & Institutional Rights, Inc.*, 547 U.S. 47, is misplaced. That case involved Congress's "broad and sweeping" power over the military. *Id.* at 58. And "nothing about the statute" there "affect[ed] the composition" of the law school. *Id.* at 70. Here, as Defendants repeatedly emphasize, if enforced against Crosspoint, §4602 would require Crosspoint to admit students who disagree with Crosspoint's religious beliefs about sex, gender, and the nature of salvation. That would directly affect Crosspoint's ability to express its Christian message.

Crosspoint is not, as Defendants complain (at 51 n.26), attempting to make a right to association argument. In *FAIR*, the recruiters were "outsiders who come onto campus for the limited purpose of trying to hire students," 547 U.S. at 69. Here, the students at BCS are full participants in the school community. Thus, they may not express a message that conflicts with BSC's "own message." *Id.* at 64. It would undermine BCS's message to explain that one's sex and gender is God-given, sacred and unchangeable on one hand, while allowing a student to present as the opposite gender on the other. In that case, BCS would be forced to convey a message that conflicts with their teachings.

## CONCLUSION

The Court should vacate the district court's judgment and remand the case with instructions to permanently enjoin the state from enforcing 5 M.R.S.A. §4572 and 5 M.R.S.A. §4602 against Crosspoint.

Respectfully submitted,

*/s/ Patrick Strawbridge*

<table>
<tr><td>Kelly J. Shackelford</td><td>Patrick Strawbridge</td></tr>
<tr><td>David J. Hacker</td><td>Consovoy McCarthy PLLC</td></tr>
<tr><td>Jeremiah G. Dys</td><td>10 Post Office Sq.</td></tr>
<tr><td>First Liberty Institute</td><td>8th Flr. S. PMB #706</td></tr>
<tr><td>2001 W. Plano Parkway, Ste. 1600</td><td>Boston, MA 02109</td></tr>
<tr><td>Plano, TX 75075</td><td>(617) 227-0548</td></tr>
<tr><td>(972) 941-4444</td><td>patrick@consovoymccarthy.com</td></tr>
<tr><td>kshackelford@firstliberty.org</td><td></td></tr>
<tr><td></td><td>Tiffany H. Bates</td></tr>
<tr><td>Camille P. Varone</td><td>Consovoy McCarthy PLLC</td></tr>
<tr><td>First Liberty Institute</td><td>1600 Wilson Blvd., Ste. 700</td></tr>
<tr><td>1331 Pennsylvania Ave. NW, Ste. 1410</td><td>Arlington, VA 22209</td></tr>
<tr><td>Washington, DC 20004</td><td>(703) 243-9423</td></tr>
<tr><td>(202) 921-4105</td><td>tiffany@consovoymccarthy.com</td></tr>
<tr><td>cvarone@firstliberty.org</td><td></td></tr>
<tr><td></td><td></td></tr>
<tr><td>November 12, 2024</td><td>*Counsel for Appellant*</td></tr>
</table>

17

## CERTIFICATE OF COMPLIANCE

This brief complies with Rule 32(a)(7) because it contains 4,301 words, excluding the parts that can be excluded. This brief also complies with Rule 32(a)(5)-(6) because it is prepared in a proportionally spaced face using Microsoft Word in 14-point Garamond font.

Dated: November 12, 2024                    */s/ Patrick Strawbridge*

**CERTIFICATE OF SERVICE**

I filed this brief on the Court's electronic filing system, which will email everyone

requiring notice.

Dated: November 12, 2024                     */s/ Patrick Strawbridge*